UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IKE ROBINSON,

    Plaintiff,

v.                                          Case No. 05-CV-70075

STATE FARM MUTUAL AUTOMOBILE      Honorable Patrick J. Duggan
INSURANCE COMPANY,

    Defendant.
_____/

**OPINION AND ORDER
DISMISSING PLAINTIFF'S DISCRIMINATION CLAIM**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 9, 2005.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

On January 10, 2005, Ike Robinson ("Plaintiff") filed a two-count complaint against State Farm Mutual Automobile Insurance Company ("Defendant") in this Court alleging: (I) violations of 42 U.S.C. § 1981; and (II) breach of contract. Defendant sought a dismissal of Count II and a summary judgment with respect to Count I. A hearing on this motion was held on October 12, 2005. In an Opinion and Order dated October 13, 2005, this Court dismissed Count II–Plaintiff's breach of contract claim–without prejudice. In addition, this Court took Defendant's motion for summary judgment with respect to Count I–Plaintiff's discrimination claim–under advisement for the following reasons:

> At the hearing on October 12, 2005, in response to the Court's inquiry as to Plaintiff's proof of disparate treatment, Plaintiff's counsel contended that because Defendant has not produced records requested of it during discovery, Plaintiff is unable to demonstrate to this Court that Plaintiff was treated differently than other claimants. Although Plaintiff has pointed to evidence that a racially derogatory comment was made to Plaintiff in connection with this claim, such derogatory comment, if true, does not, in and of itself, establish that Plaintiff was <u>treated</u> discriminatorily. However, because Plaintiff has asserted that it has not received from Defendant records which it sought and to which it is entitled, this Court is not prepared, at this time, to rule on Defendant's motion for summary judgment.
>
> Plaintiff shall have the opportunity to supplement its opposition to the motion for summary judgment by November 30, 2005. In such supplement, Plaintiff shall inform the Court of any additional information which it has obtained which Plaintiff believes supports a denial of Defendant's motion for summary judgment.

(Oct. 13, 2005 Op. & Or. at 4).

On November 29, 2005, Plaintiff filed a Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment. On December 8, 2005, Defendant filed a Supplemental Brief in Support of its Motion for Summary Judgment. For the reasons set forth below, Plaintiff's discrimination claim shall be dismissed.

**I.      Factual Background**

Plaintiff has leased a Pontiac Firebird since May 16, 2000. (Mot. for Summ. J., Ex. D). Plaintiff contends that his car was stolen on June 29, 2004, at night, while Plaintiff was inside of a Detroit club. (Mot. for Summ. J., Ex. A, Robinson Dep. at 11-12). At the time the car was stolen, Plaintiff held an insurance policy for this car with Defendant. (*Id.* at 10).

Plaintiff reported the loss to Defendant on June 30, 2004. (*Id.* at 12). Plaintiff reported to Defendant that on June 29, 2004, he could not use his cellular phone to call the police because the battery was low. (Mot. for Summ. J., Ex. B at 10). Plaintiff told Defendant that he used the phone of a woman he saw on the street to call the police. (*Id.* at 15-16).

Defendant's Special Investigation Unit ("SIU") received Plaintiff's claim on July 1, 2004. According to Defendant, Plaintiff's claim was sent to the SIU because he had experienced a similar loss in 1999 and because the state of the recovered vehicle warranted further investigation. (Mot. for Summ. J., Ex. C, Shubitowski Aff. ¶3).

Defendant asked Plaintiff for his cellular phone records from June 27, 2004 to June 30, 2004, and a copy of his credit history. (*Id.* at ¶5). Plaintiff refused to turn over these documents to Defendant.

Plaintiff contends that these documents were requested because Defendant discriminates against African-Americans who live in Southfield and Detroit. (Mot. for Summ. J., Ex. A, Robinson Dep. at 14, 18). Plaintiff alleges that during the investigation, Lisa Shubitowski, Defendant's claim adjuster, said to him that, "a flag always go[es] up against [your] kind, people in Detroit and Southfield." (*Id.* at 14-15).

Defendant argues that Plaintiff did not comply with provisions of the insurance policy by refusing to provide Defendant with his cellular phone records and credit report. (Def.'s Br. Supp. Mot. Dismiss at 5). The insurance policy requires that the insured "provide all records, receipts and invoices, or certified copies of them" when there is a loss. (*Id.* Ex. B at 5-6). The insured also has a duty to assist the insurance company with "securing and giving evidence." (*Id.* at 6).

Pursuant to a July 7, 2005 Protective Order, stipulated to by both of the parties, Plaintiff turned over the requested cellular phone records and credit report to Defendant.

According to Defendant, after conducting an examination under oath (EUO) and reviewing Plaintiff's cellular phone records and credit report, State Farm has decided to pay

3

Plaintiff's claim of loss.  (Def.'s Supplemental Br. in Supp. of Mot. at 1).

## II. Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial.  FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53.  It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts."  *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment.  *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III. Applicable Law and Analysis

42 U.S.C. § 1981 prohibits intentional discrimination in the making and enforcement of contracts:

(a)   Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, liens, and exactions of every kind, and to no other.

(b)   "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981(a)-(b).

The burden-shifting framework developed by the U.S. Supreme Court for Title VII cases in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981), and *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), applies to 42 U.S.C. § 1981.[1]  *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).  Under this framework, a plaintiff first has the burden of proving, by a preponderance of the evidence, a prima facie case of discrimination.  *Burdine*, 450 U.S. at 252-53, 101 S. Ct. at 1093.

A plaintiff may meet this burden by showing that he or she was:

---

[1] Plaintiff argues that he has a claim against Defendant for direct discrimination.  In this case, however, Plaintiff has presented absolutely no evidence of direct discrimination.  Therefore, the Court will not address this argument.

>  (1) a member of a protected class;
>
>  (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and
>
>  (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001) (citing *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 705 (D. Md. 2000)).

If the plaintiff establishes a prima facie case, a presumption of discrimination arises. *See Lytle v. Malady* (on rehearing), 458 Mich. 153, 173, 579 N.W.2d 906, 914-15 (1998). The burden then shifts to the defendant to present a legitimate, non-discriminatory reason for the challenged denial. *See Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094. To meet its burden, the defendant "must clearly set forth, through the introduction of admissible evidence, the reasons . . ." for the denial. *Id.* at 255, 101 S. Ct. at 1094.

Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not defendant's true reasons, but were a pretext for discrimination. *Id.* at 253, 101 S. Ct. at 1093. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* This includes the burden of proving that the defendant's proffered reason was in fact a pretext designed to mask illegal discrimination. To survive summary judgment at this step in the analysis, "a plaintiff must prove discrimination with admissible evidence,

either direct or circumstantial, sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the [defendant] toward the plaintiff." *Lytle*, 458 Mich. at 176, 579 N.W.2d at 916.

In this case, Defendant contends that Plaintiff has failed to satisfy his prima facie case. Although Plaintiff has established (1) that he is an African-American (2) who sought to enforce his insurance contract after his vehicle was stolen, Defendant argues that Plaintiff has not satisfied the third prong of his prima facie case. *See Christian*, 252 F.3d at 872.

Plaintiff was not "denied the right to . . . enjoy benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not . . ." *Id.* As set out above, Defendant has not denied Plaintiff's claim. Moreover, Plaintiff has not identified any similarly situated persons outside the protected class who were not required to produce cellular phone records, a credit report, and submit to an EUO. (Mot. for Summ. J., Ex. A, Robinson Dep. at 29).

However, viewing the evidence in the light most favorable to Plaintiff, the Court believes that Plaintiff has satisfied the third prong of his prima facie case by presenting evidence that Plaintiff was "denied the right to . . . enjoy the benefits or privileges of the contractual relationship in that . . . (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." *See Christian*, 252 F.3d at 872.[2] Plaintiff contends that Defendant requested Plaintiff's

---

[2] As explained in *Christian*:
Subpart (3)(b) is written as an alternative to (3)(a) to account for situations in the commercial establishment context in which a plaintiff cannot identify other similarly situated persons. Under this subpart, a retailer's "markedly hostile" conduct may

7

cellular phone records and credit report because Defendant discriminates against African-Americans who live in Southfield and Detroit. (Mot. for Summ. J., Ex. A, Robinson Dep. at 14, 18). Moreover, Plaintiff alleges that during the investigation, Lisa Shubitowski, Defendant's claim adjuster, said to him that, "a flag always go[es] up against [your] kind, people in Detroit and Southfield." (*Id.* at 14-15). Therefore, the Court believes that Plaintiff has stated a prima facie case of discrimination.

Defendant contends that it requested Plaintiff's cellular phone records and credit report because of a number of factors including:

- the fact that the vehicle was leased;

- theft of the odometer;

- the removal of the entire steering shaft, steering wheel, and driver's airbag, which precluded an examination of the ignition system to ascertain whether it was tampered with[3]; and

- the fact that the vehicle was equipped with General Motors' anti-theft system, which requires the proper resistor pellet to start and operate the vehicle.

((Mot. for Summ. J., Ex. C, Shubitowski Aff. ¶4).

Defendant contends that it asked Plaintiff for his cell phone records from June 27, 2004

---

"give rise to a rational inference of discrimination sufficient to support a prima facie case" without any evidence of how similarly situated persons were treated. Factors relevant to subpart (3)(b)'s "markedly hostile" component include whether the conduct "is (1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.

*Christian*, 252 F.3d 862, 871 (citing *Callwood*, 98 F. Supp. 2d at 708).

[3] According to the police report, however, the steering column was smashed (SMAS), not missing. Pl.'s Resp. to Mot. for Summ. J., Ex. F).

to June 30, 2004, and a copy of his credit history. (*Id.* at ¶5). According to Defendant, the cell phone records were needed to verify that there were not any other calls from Plaintiff's cell phone around the time that he indicated that he had to use someone else's phone to call the police because his cell phone battery was low. (*Id.* at ¶6). Defendant contends that the credit report was needed to verify whether or not Plaintiff had either checked into financing to purchase the vehicle or had looked into trading the vehicle. (*Id.* at ¶7). Consequently, the Court believes that Defendant has presented a legitimate, non-discriminatory reason for requesting Plaintiff's cellular phone records and credit report.

Plaintiff has offered no evidence to support his argument that Defendant's proffered reasons were a pretext for discrimination.[4] Plaintiff contends that a review of Lisa Shubitowski's thirty most recent auto theft cases "reveals that State Farm cannot prove that it requested a credit report <u>and</u> cell phone records from any Caucasians or any other race which is <u>not</u> in a protected class." (Pl.'s Supplemental Br. at 2 (emphasis in original)). However, the review merely shows that in Shubitowski's thirty most recent auto theft cases, there were five instances in which both credit reports and cell phone records were requested. (Ex. N). In all five instances Shubitowski lists the race as "unknown." Therefore, although Plaintiff is correct in asserting that Shubitowski cannot state that, in her thirty most recent auto theft cases, she ever requested cell phone records and credit reports from any Caucasian,

---

[4] In his Supplemental Brief, Plaintiff again asks the Court to delay decision on Defendant's Motion for Summary Judgment until Plaintiff's motion to compel the discovery of Lisa Shubitowski's personnel file, which was recently submitted to Magistrate Steven D. Pepe for *in camera* examination, is ruled upon. (Pl.'s Supplemental Br. at 1). However, in an Order dated November 28, 2005, Magistrate Judge Pepe concluded that the file contained no relevant documents and denied Plaintiff's motion.

this is not Defendant's burden. As set forth above, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff" and this includes Plaintiff's burden of showing pretext. *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093. Therefore, Plaintiff's 42 U.S.C. § 1981 claim shall be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment with respect to Count I (discrimination) of Plaintiff's Complaint is **GRANTED**.


    s/PATRICK J. DUGGAN
    UNITED STATES DISTRICT JUDGE

Copies to:
Victor P. Valentino, Esq.
Robert P. Ludolph, Esq.
Amanda Shelton, Esq.